O

1

2

3

4

5

6

7

8     UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA

10

11  VANESSA HERNANDEZ,                    )   Case No. ED CV 12-655-SP
                                          )
12              Plaintiff,                )
                                          )
13         v.                             )   MEMORANDUM OPINION AND
                                          )   ORDER
14  CAROLYN W. COLVIN, Acting             )
15  Commissioner of Social Security       )
    Administration,                       )
16                                        )
                Defendant.                )
17                                        )
    _____)
18

19                              **I.**

20                        **INTRODUCTION**

21         On May 10, 2012, plaintiff Vanessa Hernandez filed a complaint against

22  defendant Michael J. Astrue,[1] seeking a review of a denial of a period of disability

23  and disability insurance benefits ("DIB") and supplemental security income

24  ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes

25  before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court

26  _____

27      [1]   Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, who is now Acting
    Commissioner of Social Security Administration, has been substituted as the
28  defendant.

1    deems the matter suitable for adjudication without oral argument.

2        Plaintiff presents two disputed issues for decision:  (1) whether the

3    Administrative Law Judge ("ALJ") properly discounted plaintiff's credibility; and

4    (2) whether the ALJ properly evaluated the lay witness testimony of plaintiff's

5    friend, Dianette Porter.  Plaintiff's Memorandum in Support of Complaint ("Pl.

6    Mem.") at 4-13; Memorandum in Support of Defendant's Answer ("Def. Mem.")

7    at 2-7.

8        Having carefully studied, inter alia, the parties's moving papers, the

9    Administrative Record ("AR"), and the decision of the ALJ, the court concludes

10   that, as detailed herein, the ALJ improperly discounted plaintiff's credibility.

11   Therefore, the court remands this matter to the Commissioner of the Social

12   Security Administration ("Commissioner") in accordance with the principles and

13   instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

16       Plaintiff, who was forty-one years old on the date of her June 29, 2010

17   administrative hearing, completed two years of college.  AR at 19, 27, 30, 57, 198,

18   210.  Her past relevant work was as a home attendant, tutor, fast food worker,

19   telephone solicitor and cashier.  *Id.* at 43, 212-19.

20       On January 8, 2007, plaintiff filed applications for DIB and SSI due to

21   diabetes, carpal tunnel syndrome, asthma, left arm neuropathy, high blood

22   pressure, bipolar disorder and anxiety.  *Id.* at 86-87, 106, 111, 203.  The

23   Commissioner denied plaintiff's applications initially and upon reconsideration,

24   after which she filed a request for a hearing.  *Id.* at 86-89, 106-14, 117-21, 123.

25       On January 5, 2009, plaintiff, represented by counsel, appeared and testified

26   at a hearing before the ALJ.  *Id.* at 55-58, 61-72, 84-85.  The ALJ also heard

27   testimony from Dr. Lowell L. Sparks, Jr., a medical expert, and Luis O. Mas, a

28   vocational expert.  *Id.* at 58-61, 72-84, 93.  On April 29, 2009, the ALJ denied

plaintiff's claim for benefits (the "2009 Decision"). *Id.* at 93-100.

Plaintiff requested a review of the decision by the Appeals Council. *Id.* at 147. On August 14, 2009, the Appeals Council vacated the 2009 Decision and remanded the case. *Id.* at 103-05. The Appeals Council ordered the ALJ to: (1) resolve any conflicts between the occupational evidence provided by plaintiff concerning her past work as a home health aid and the *Dictionary of Occupational Titles*; (2) further develop the record by obtaining additional evidence and/or further clarification concerning the opinions of Drs. Rahima Afghan, Linda M. Smith, Nicholas N. Lin, and Sparks related to plaintiff's work capacity, and evaluate these opinions; (3) assess plaintiff's residual functional capacity ("RFC")[2]; and (4) evaluate Porter's lay witness testimony. *Id.*

On June 29, 2010, plaintiff, represented by counsel, appeared and testified at a second hearing before the ALJ.[3] *Id.* at 27-30, 41-42, 49-51. The ALJ also heard testimony from two medical experts, Drs. Joseph Malancharuvil and Samuel Landau, and from Sandra M. Fioretti, a vocational expert. *Id.* at 7, 27, 31-41, 43-49. On August 26, 2010, the ALJ again denied plaintiff's claim for benefits (the "2010 Decision"). *Id.* at 7-20.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since her alleged onset date of disability, July 1, 2002. *Id.* at 9.

---

[2]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3]   Plaintiff gave only limited testimony at the second hearing on June 29, 2010, because she indicated that her condition was the same as it was at the time of the January 5, 2009 hearing. *See* AR at 12, 41.

1    At step two, the ALJ found that plaintiff suffered from the following severe

2    impairments: obesity; diabetes mellitus with sensory peripheral neuropathy;

3    bilateral carpal tunnel syndrome; asthma; depressive disorder, not otherwise

4    specified; psychological reaction to physical condition; post-traumatic stress

5    disorder; and history of substance abuse. *Id.*

6    At step three, the ALJ found that plaintiff's impairments, whether

7    individually or in combination, did not meet or medically equal one of the listed

8    impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 10.

9    The ALJ then assessed plaintiff's RFC and determined that she had the RFC

10   to perform a range of light work with the following specific limitations: she can

11   lift and/or carry twenty pounds occasionally and ten pounds frequently, stand

12   and/or walk for six hours out of an eight-hour workday with regular breaks, and sit

13   for six hours out of an eight-hour workday with regular breaks; she can climb

14   stairs, but she cannot climb ladders, work at heights or balance; her work

15   environment should be air-conditioned and free of excessive inhaled pollutants;

16   she cannot do forceful gripping, grasping or twisting; she can do occasional fine

17   manipulation such as keyboarding; she can do frequent gross manipulation such as

18   opening drawers and carrying files; she can do moderately complex tasks

19   involving up to four to five step instructions in a relatively habituated setting; she

20   cannot do work involving safety operations; she cannot operate hazardous

21   machinery; and she cannot do highly fast-paced work, such as rapid assembly line

22   work. *Id.* at 11-12.

23   The ALJ found, at step four, that plaintiff was unable to perform any past

24   relevant work. *Id.* at 18.

25   At step five, based upon plaintiff's RFC, vocational factors and the

26   vocational expert's testimony, the ALJ concluded that "there are jobs that exist in

27   significant numbers in the national economy that [plaintiff] can perform,"

28   including cafeteria attendant, sales attendant, and counter clerk. *Id.* 19-20.

1   Consequently, the ALJ concluded that plaintiff did not suffer from a disability as
2   defined by the Social Security Act. *Id.* at 20.

3       Plaintiff filed a timely request for review of the ALJ's decision, which was
4   denied by the Appeals Council. *Id.* at 1-3, 194. The ALJ's decision stands as the
5   final decision of the Commissioner.

6                                    **III.**

7                          **STANDARD OF REVIEW**

8       This court is empowered to review decisions by the Commissioner to deny
9   benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
10  Administration must be upheld if they are free of legal error and supported by
11  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
12  (as amended). But if the court determines that the ALJ's findings are based on
13  legal error or are not supported by substantial evidence in the record, the court
14  may reject the findings and set aside the decision to deny benefits. *Aukland v.*
15  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
16  1144, 1147 (9th Cir. 2001).

17      "Substantial evidence is more than a mere scintilla, but less than a
18  preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such
19  "relevant evidence which a reasonable person might accept as adequate to support
20  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
21  F.3d at 459. To determine whether substantial evidence supports the ALJ's
22  finding, the reviewing court must review the administrative record as a whole,
23  "weighing both the evidence that supports and the evidence that detracts from the
24  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be
25  affirmed simply by isolating a specific quantum of supporting evidence.'"
26  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
27  Cir. 1998)). If the evidence can reasonably support either affirming or reversing
28  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

                                     5

1  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
2  1992)).

## IV.

## DISCUSSION

Plaintiff argues that the ALJ failed to make a proper credibility
determination.  Pl. Mem. at 4-11, 13.  Specifically, plaintiff contends that the ALJ
did not provide clear and convincing reasons that are supported by substantial
evidence for discounting plaintiff's subjective pain testimony concerning her
upper extremity limitations.[4]  *Id.*  This court agrees.

An ALJ must make specific credibility findings, supported by the record.
Social Security Ruling ("SSR") 96-7p.[5]  To determine whether testimony
concerning symptoms is credible, an ALJ engages in a two-step analysis.
*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36  (9th Cir. 2007).  First, an ALJ
must determine whether a claimant produced objective medical evidence of an
underlying impairment "'which could reasonably be expected to produce the pain
or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d
341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

[4]    Other than brief and isolated references to her mental and lower extremity
impairments (*see, e.g.*, Pl. Mem. at 5, 7), plaintiff's contentions focus strictly on
the ALJ's "fail[ure] to cite any 'clear and convincing' reasons for rejecting
Plaintiff's specific upper extremity symptoms and limitations."  *Id.* at 9; *see id.* at
4-11, 13.  Accordingly, the court construes plaintiff's claim as challenging the
ALJ's rejection of plaintiff's allegations concerning her upper extremities.

[5]    "The Commissioner issues Social Security Rulings to clarify the Act's
implementing regulations and the agency's policies.  SSRs are binding on all
components of the [Social Security Administration].  SSRs do not have the force
of law.  However, because they represent the Commissioner's interpretation of the
agency's regulations, we give them some deference.  We will not defer to SSRs if
they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246
F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

6

malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

In his decision, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (AR at 13), which "satisfie[s] the first [step] of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second step, because the ALJ did not find any evidence of malingering (*see, generally,* AR at 13), the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. *See Benton*, 331 F.3d at 1040.

Here, the ALJ found that plaintiff's statements regarding her symptoms and limitations were "not credible to the extent those statements are inconsistent with" the assessed RFC. AR at 13. The ALJ provided three reasons for discounting plaintiff's credibility: (1) plaintiff was noncompliant with her prescribed medications; (2) plaintiff received only routine and conservative treatment; and (3) the objective medical evidence of record does not support plaintiff's subjective allegations. *Id.* With respect to plaintiff's upper extremity symptom allegations, the ALJ's reasons were not clear and convincing reasons supported by substantial evidence.

First, the ALJ noted that there is evidence plaintiff was noncompliant with her prescribed medications. *Id.* The ALJ may properly consider plaintiff's

1  "failure to . . . follow a prescribed course of treatment [in] cast[ing] doubt on the

2  sincerity of [plaintiff]'s pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th

3  Cir. 1989).  But plaintiff's noncompliance must be "unexplained[] or inadequately

4  explained" to support a finding of non-credibility.  *Id.*  Indeed, it is well

5  established that

6      the adjudicator must not draw any inferences about an individual's

7      symptoms and their functional effects from a failure to seek or pursue

8      regular medical treatment without first considering any explanations

9      that the individual may provide, or other information in the case

10     record, that may explain infrequent or irregular medical visits or

11     failure to seek medical treatment.

12  SSR 96-7p, 1996 WL 374186, at *7.

13     Here, there is no indication that the ALJ considered any explanation for

14  plaintiff's failure to take her prescribed medication related to her upper extremity

15  impairments.  *See, generally,* AR at 13.  Yet a review of the record suggests that

16  plaintiff's lack of compliance may have been justified in many instances.  For

17  example, while page 4 of Exhibit 8F cited by the ALJ shows that plaintiff "r[a]n

18  out of meds" on December 18, 2006, it also indicates that plaintiff "moved to

19  Blythe from San Bernardino" 2 weeks prior, and that her "P[rimary ]C[are

20  ]P[rovider]" was in San Bernardino.  *See id.* at 13, 366.  Similarly, page 5 of

21  Exhibit 19F cited by the ALJ indicates that plaintiff was "non-compliant" with her

22  diabetes medication "today" on November 27, 2007; however, a note contained in

23  plaintiff's medical records dated the same day reports that plaintiff "is no longer

24  able to see her current Dr. for her diabetes" due to inadequate insurance coverage,

25  and that "she doesn't know who to go to now."  *See id.* at 13, 425, 432.  Moreover,

26  while page 3 of Exhibit 9F and page 2 of Exhibit 26F cited by the ALJ indicate

27  that plaintiff ran out of medication for two days in March 2004 and January 2009,

28  respectively, (*see id.* at 13, 369, 526), these short delays in obtaining medication

8

1 | refills may be explained by plaintiff's difficulty accessing health services in light
2 | of her indigency.  Indeed, plaintiff testified to foregoing needed healthcare due to
3 | lack of transportation in at least one instance.  *See id.* at 13, 66.  Thus, to the extent
4 | the ALJ wished to discredit plaintiff based on the above-referenced instances of
5 | noncompliance, the ALJ should have developed the record by asking plaintiff
6 | about her failure to take her medication.  *See* SSR 96-7p, 1996 WL 374186, at *7
7 | ("The adjudicator may need to recontact the individual or question the individual
8 | at the administrative proceeding in order to determine whether there are good
9 | reasons the individual does not seek medical treatment or does not pursue
10 | treatment in a consistent manner."); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.
11 | 2005) ("In Social Security cases the ALJ has a special duty to fully and fairly
12 | develop the record and to assure that the claimant's interests are considered.")
13 | (internal quotation marks and citation omitted).

14 |      Aside from the potentially justified instances of noncompliance discussed
15 | above, the ALJ pointed to only two additional incidents in five years when
16 | plaintiff failed to follow her prescribed treatment, namely one episode when
17 | plaintiff apparently ran out of diabetes medication for two weeks in July 2004, and
18 | one "meds compliance" notation in records of plaintiff's February 2009
19 | emergency room visit.[6]  *See* AR at 13, 273, 539.  This does not display the type of
20 | apathy that would suggest that plaintiff's symptoms are not as serious as alleged.
21 | In sum, the ALJ erred to the extent he rejected plaintiff's credibility concerning
22 | her upper extremity symptoms due noncompliance with treatment.

23 |

24 |      [6]   Given that plaintiff challenges the ALJ's credibility determination
25 | "regarding her specific upper extremity limitations," (Pl. Mem. at 13; *see id.* at 4-
11), the court need not address instances of noncompliance related to treatment of
26 | plaintiff's mental impairments, as these bear no logical relation to the severity of
27 | plaintiff's upper extremity symptoms and/or plaintiff's "unwillingness to do that
which is necessary to improve her condition" concerning her upper extremities.
28 | *See* AR at 13.

1    Second, the ALJ noted that plaintiff received only routine and conservative

2    treatment. *Id.* at 13. While "evidence of 'conservative treatment' is sufficient to

3    discount a claimant's testimony regarding severity of an impairment" (*Parra v.*

4    *Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)), the ALJ failed to articulate what aspect

5    of plaintiff's treatment was conservative and did not cite any evidence in the

6    record supporting this conclusion. *See, generally,* AR at 13. Moreover, a review

7    of the medical evidence reveals that plaintiff's physicians repeatedly treated

8    plaintiff with narcotic pain relievers, such as Tylenol # 3 and Vicodin, over the

9    course of several years. *See, e.g.,* AR at 273, 275, 287, 294, 302, 311-12, 320,

10   322, 331-32, 351, 355, 358, 359, 371, 373, 414, 443, 445, 454, 456, 487, 490, 540-

11   41 (medical records documenting plaintiff's treatment with Tylenol # 3 and/or

12   Vicodin in July, August and September 2004, December 2005, January, February,

13   March, May, June, July and November 2006, January, May and August 2007, and

14   February and May 2009). Plaintiff's treatment with narcotic pain relievers

15   "commonly prescribed for severe and unremitting pain" (*see Osenbrock v. Apfel*,

16   240 F.3d 1157, 1166 (9th Cir. 2001)), cannot properly be characterized as routine

17   or conservative. *See Samaniego v. Astrue*, 2012 WL 254030, at *4 (C.D. Cal.

18   2012) (rejecting ALJ's finding that plaintiff received only conservative treatment

19   where plaintiff was, among other things, "prescribed Tylenol # 3 which contains a

20   narcotic pain reliever (codeine) and is used for treating moderate to severe pain.")

21   (citation omitted); *Juhala v. Astrue*, 2012 WL 13972, at *7 (D. Or. 2012)

22   (rejecting ALJ's finding that plaintiff received only conservative treatment where

23   "the record clearly shows that plaintiff took prescription pain medication (Tylenol

24   # 3) for his back pain during the relevant time frame[.]"); *Yang v. Barnhart*, 2006

25   WL 3694857, at *4 (C.D. Cal. 2006) (ALJ's conclusion that plaintiff received only

26   conservative treatment improper where "[t]he record shows that Plaintiff was

27   treated with several potent drugs to alleviate his pain, including Tylenol # 3 with

28   codeine.") (citations omitted).

1    Third, the ALJ noted that the objective medical evidence does not support

2  plaintiff's subjective allegations.  AR at 13.  But the medical evidence of record

3  documents the following objective findings concerning plaintiff's upper

4  extremities:  (1) reported pain at right wrist during Phalen's test (*id.* at 377); (2)

5  positive Phalen's test and Tinel's sign bilaterally (*id.* at 566); and (3) nerve

6  conduction study results indicative of asymmetric neuropathy with superimposed

7  severe bilateral carpel tunnel syndrome (*id.* at 567-68).  Although the physical

8  examination results of consultative examining physicians, Drs. Lin and Fabella,

9  show no or minimal evidence of upper extremity abnormality (*see id.* at 13-14,

10  374-79, 463-67), the ALJ gave "little weight" to Dr. Lin's opinion (*id.* at 16), and

11  rejected Dr. Fabella's assessment of plaintiff's manipulative limitations (*id.* at 15-

12  16).  It is therefore unclear how the above objective findings do not support

13  plaintiff's claims, particularly when the ALJ discredited the assessments of Drs.

14  Fabella and Lin concerning plaintiff's upper extremities.  *Id.* at 15-16.  As such,

15  the ALJ's reason is not supported by substantial evidence.  And in any event, since

16  the ALJ failed to provide any other legally sufficient reason to discredit plaintiff,

17  the ALJ erred to the extent he rejected the severity of plaintiff's alleged limitations

18  based solely on a lack of objective medical evidence.  *See Bunnell*, 947 F.2d at

19  347 (ALJ may not discredit plaintiff's testimony "solely because the degree of

20  pain [she] alleged . . . is not supported by objective medical evidence"); *Moisa v.*

21  *Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

22    Finally, defendant contends that the ALJ's credibility determination was

23  proper because "there was evidence that Plaintiff exaggerated her symptoms and

24  attempted manipulation at . . . the psychiatric consultative examination[]" by Dr.

25  Smith.  Def. Mem. at 5; *see* AR at 391-98.  But although the ALJ cited this finding

26  by Dr. Smith, the ALJ then proceeded to discredit Dr. Smith because her "opinion

27  was based solely on a single examination and her conclusion that there is no

28  medically determinable psychiatric disorder other than substance abuse is not

11

1    consistent with the record as a whole." AR at 17.  The ALJ did not reject

2    plaintiff's testimony based on Dr. Smith's findings of symptom exaggeration, and

3    the court cannot affirm the ALJ's conclusion on this ground.  *See Orn v. Astrue*,

4    495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the

5    ALJ in the disability determination and may not affirm the ALJ on a ground upon

6    which he did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)

7    ("We are constrained to review the reasons the ALJ asserts[ and i]t was error for

8    the district court to affirm the ALJ's . . . decision based on evidence that the ALJ

9    did not discuss.") (internal citations omitted).

10        In short, the ALJ did not provide clear and convincing reasons supported by

11   substantial evidence for discounting plaintiff's credibility in relation to her upper

12   extremity limitations.

13                                   **V.**

14                   **REMAND IS APPROPRIATE**

15        The decision whether to remand for further proceedings or reverse and

16   award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

17   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by

18   further proceedings, or where the record has been fully developed, it is appropriate

19   to exercise this discretion to direct an immediate award of benefits.  *See Benecke*

20   *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

21   1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

22   turns upon their likely utility).  But where there are outstanding issues that must be

23   resolved before a determination can be made, and it is not clear from the record

24   that the ALJ would be required to find a plaintiff disabled if all the evidence were

25   properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96;

26   *Harman*, 211 F.3d at 1179-80.

27        Here, as set out above, remand is required because the ALJ erred in failing

28   to properly evaluate plaintiff's credibility.  On remand, the ALJ shall reconsider

1  plaintiff's subjective complaints and the resulting limitations concerning her upper

2  extremities, and either credit plaintiff's testimony or provide clear and convincing

3  reasons supported by substantial evidence for rejecting them.[7]  The ALJ shall then

4  assess plaintiff's RFC and proceed through steps four and five to determine what

5  work, if any, plaintiff is capable of performing.

6                                          **VI.**

7                                  **CONCLUSION**

8          IT IS THEREFORE ORDERED that Judgment shall be entered

9  REVERSING the decision of the Commissioner denying benefits, and

10 REMANDING the matter to the Commissioner for further administrative action

11 consistent with this decision.

12

13 DATED: February 22, 2013

14                                          _____

15                                          SHERI PYM
                                            United States Magistrate Judge

16

17

18

19  _____

20      [7]    Having concluded that the ALJ erred in discounting plaintiff's credibility, it
    is unnecessary to address plaintiff's remaining contention that the ALJ failed to
21  properly evaluate Porter's lay witness testimony.  *See* Pl. Mem. at 4, 11-13; *Lewis
    v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may only discount the testimony
22  of lay witnesses if he or she provides specific "reasons germane to each witness
    for doing so").  Although the court does not decide this issue, because the case is
23  being remanded for further proceedings, the court notes that, just as it is unclear
24  how the objective medical evidence warrants discounting plaintiff's credibility,
    the objective medical evidence may also not fail to support Porter's claims
25  regarding plaintiff's upper extremity limitations.  Moreover, the ALJ's rejection of
26  Porter's testimony because of bias (*see* AR at 18) appears to "amount to a
    wholesale dismissal of the testimony of all [lay] witnesses as a group and therefore
27  does not qualify as a reason germane to [Porter.]"  *Smolen*, 80 F.3d at 1289.
28